# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF AGNES R. SKEBA,<br><br>    Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil Action No. 17-cv-10231<br><br>MEMORANDUM |

This matter is before the Court on a motion for summary judgment brought by Plaintiff, the Estate of Agnes R. Skeba ("Estate" or "Plaintiff") (ECF No. 12), and on a motion for summary judgment brought by Defendant, the United States of America. (ECF No. 13). Plaintiff seeks to set aside $450,959 in penalties assessed by the Internal Revenue Service ("IRS") for the alleged late filing of an Estate Tax Return.

On June 10, 2013, Agnes R. Skeba ("Decedent") died. (ECF No. 12-2, ¶ 1). Per the IRS Code, the initial date for the Estate to file a federal estate tax return was nine months after the death (March 10, 2014). (ECF No. 12-2, ¶ 2).

On or about March 6, 2014, Plaintiff, through its counsel, George White, Esq., filed an IRS form entitled Application for Extension of Time to File a Return and/or Pay U.S. Estate . . . Taxes (IRS Form 4768) with a partial payment of the estate tax in the amount of $725,000 along with a cover letter explaining the reasons for the application. (ECF No. 12-2, ¶ 3).

White's letter to the IRS stated that he was paying all of the liquid assets ($1.475 million) of the Estate to the State of New Jersey, Commonwealth of Pennsylvania, and the United States for payment of state and federal estate taxes. White furthered that the Estate was negotiating a mortgage on a commercial property to satisfy the remainder the estate tax it owed to the federal government; but this would require additional time. More specifically, White's letter states:

1

> Our office is representing Stanley L. Skeba, Jr. as the Executor of the Estate of Agnes Skeba. Enclosed herewith is a completed "Form 4768 – Application for Extension of Time to File a Return and/or Pay U.S. Estate Taxes" along with estimated payment in the amount of $725,000 made payable to "The United States Treasury" for the above referenced Estate Tax.
>
> Additionally, we are requesting a six (6) month extension of time to make full payment of the amount due. Despite the best efforts of this office and the Executor, the Estate had limited liquid assets at the time of the decedent's death. Accordingly, we have been working to secure a mortgage on a substantial commercial property owned by the Estate in order to make timely payment of the balance of the Estate Tax anticipated to be due.
>
> Currently, we have liquid assets in the amount of $1.475 million and the estimated value of the total estate is $14.7 million. Accordingly, we have submitted payments in the amount of $575,000 to the State of New Jersey, Division of Revenue, for State estate taxes payable and in the amount of $250,000 to the Pennsylvania Department of Revenue for State inheritance taxes payable. We are hereby submitting the balance of available funds to you, in the amount of $725,000, as partial payment of the expected U.S. Estate Taxes for the Estate.
>
> We are in the process of securing a mortgage, which was supposed to close prior to the taxes being due, in the amount of $3.5 million that would have permitted us to make full payment of the taxes timely. Due to circumstances previously unknown and unavoidable by the Executor, the lender has not been able to comply with the closing deadline of March 7, 2014. It is anticipated that the lender will be clear to close within fourteen (14) days and then we will remit the balance of the estimated U.S. Estate Taxes payable.
>
> Additionally, there has been delays in securing all of the necessary valuations and appraisals due to administrative delays caused by contested estate litigation currently pending in Middlesex County, New Jersey.

(ECF No. 12-2, Ex. C).

At the time, the Estate was valued at approximately $13.1 million of which $10.2 million consisted of real estate (much of it was farmland) and farming machinery. (ECF No. 12-2, ¶ 6). As a result, there were delays in securing all of the necessary valuations and appraisals; and there

was ongoing contested estate litigation pending in Middlesex County, New Jersey. (*Id.* ¶. 7).

As anticipated within the letter, the Plaintiff refinanced its real estate, and made a second payment to the IRS in the amount of $2,745,000 around March 18, 2014, only eight days after the original due date for payment. (*Id.* ¶ 11). This amount plus the prior payment ($725,000) totaled $3,470,000 in estate taxes having been paid to the IRS.

On or about June 25, 2014, D. Owens of the IRS approved Plaintiff's application to extend the time to file the estate tax return from March 10, 2014 until September 10, 2014 (*Id.* Ex. E). The Owens letter noted that any extension of time was subject to the caveat that the extension was "granted on a year by year basis only." The letter reads:

> Any extension will be granted on a year by year basis only. In granting an extension of time to pay the estate tax or an installment for a previously approved extension, the Internal Revenue can require a performance bond, under Section 6161 (d) and 6165 of the Internal Revenue Code with a face value of up to double the amount being deferred.
>
> In the event the Internal Revenue Service denies your extension request, your payment of tax is due upon receipt of the denied extension.

On or about July 8, 2014, the extension of time to pay the estate tax was granted by Gloria Olsen of the IRS until September 10, 2014. (*Id.*, Ex. F). The Olsen approval stated further conditions may be imposed for future extensions. Ms. Olsen wrote in part:

> The requirement to furnish a bond under IRC § 6165 is being waived for this extension to pay request but may be a requirement for future requests. Please note that the granting of an extension of time for payment does not relieve the estate from liability for the payment of interest during the period of extension. Any future request for extension of time to pay the liability must be applied for on or before the date of the expiration of the previous extension.

*Id.* Neither the Olsen letter nor the Owens letter acknowledged the estimated taxes that had been paid on or about March 18, 2014; but both letters advise the Estate that any further

3

extension must be applied for prior to the last day of the previous extension.

On or around June 30, 2015, Plaintiff filed its federal estate tax return. It was prepared by David Lauer ("Lauer") and Virginia Keenan ("Keenan"), CPAs, who were engaged by the Estate and George White, Esq. to prepare the return. The return reported the net estate tax as $2,528,838, and the prior estimated payment of $3,470,000. Subtracting the net estate tax from the estimated payment showed an overpayment of $941,162. (*Id.*, Ex. D).

On August 3, 2015, the IRS responded to Plaintiff's return. It showed an Overpayment on account before adjustment" of $941,162, and then it indicated there was a penalty assessed due to the Estate's failure to file in the amount of $450,959.50 and a net "Overpayment" of $488,719.34, which was refunded to the Plaintiff. The IRS Notice stated that the "failure to file" penalty was 25% of the "unpaid amount" of $1,803,838. The IRS calculated the amount due on March 10, 2014 was $2,528,838 minus $750,000 paid, equaling an amount due of $1,803,838. The IRS then imposed a 25% penalty on that amount. (*Id.*, Ex. I).

On August 17, 2015, George White, Esq., on behalf of the Plaintiff and in response to IRS' action, sent a letter to the IRS requesting abatement of penalties in the amount of $450,959.50. (*Id.*, Ex. J).

In his letter, George White, Esq. set forth various reasons for the delay in filing Plaintiff's federal estate tax return. This includes a reference to a conversation that White had with "representatives of the IRS" in which "we were informed that so long as the payment was made in full, then the filing of the return beyond the extension deadline was permissible and would not subject the estate to any penalty." Further, White's letter set forth additional information as to why the Plaintiff did not file a timely estate tax return:

> Beyond September 10, 2014, the Estate continued to have delays in filing due to the pending and anticipated completion of the litigation over the validity of the decedent's Will, which would

4

> impact the Estate's ability to complete the filing and the executor's capacity to proceed. Initially, it, was anticipated that the trial of this matter would be heard before Judge Frank M. Ciuffani in the Superior Court of New Jersey in Middlesex County, Chancery Division-Probate Part in July of 2014. Due to health concerns on behalf of the Plaintiff, Joseph M. Skeba, the Judge delayed these proceedings multiple times through the end of 2014, each time giving us a new anticipation of the completion of the trial to permit the estate tax return to be filed. Upon the Plaintiffs improved health, the Judge finally scheduled a trial for July 7, 2015, which was expected to allow our completion in filing the return.
>
> ...
>
> Accordingly, this litigation, which was causing us reason to delay in the filing, gave rise to the estate's inability to file the return.
>
> Finally, in May of 2015 we were notified of the Estate's litigation attorney, Thomas Walsh of the law firm of Hoagland Longo Moran Dunst & Doukas, LLP, that he was diagnosed with cancer that would possibly cause him to delay this matter from proceeding as scheduled. In early June, we were notified by Mr. Walsh's office that his prognosis had worsened and he would be prevented from further handling the litigation of this matter, so new counsel within his firm would be assisting in carrying this matter through trial. Due to the change in counsel, it was deemed that the anticipated trial was no longer predictable in scheduling, so the Estate chose to file the return as it stood at such time.

(*Id.*, Ex. J at 2-3).

On or around November 5, 2015, the IRS responded to White's letter in which it stated that the reasons within White's letter do not "establish reasonable cause or show due diligence." (*Id.*, Ex. K).

In response to this letter, on December 8, 2015, Mark R. Aumack ("Aumack"), Mr. Skeba's personal accountant, filed an appeal of the IRS determination. Plaintiff never received a reply to this letter. (*Id.*, Ex. L). Aumack's letter of appeal reiterated the same points as White's August 17, 2015 letter, and it also highlighted one additional reason that was not fully articulated in White's letter:

> I do not believe the IRS had knowledge of the extension in place at the time the penalty was assessed, nor did they have a record of the

5

> additional payment of $2,745,000. The IRS listed the unpaid tax as $1,803,838 and charged the maximum 25% to arrive at the penalty of $450,959.50. The estate not only paid the entire tax the estate owed by the due date to pay but also had an overpayment. Section 6651(b) bars a penalty for late filing when estimated taxes are paid.

(*Id.*, Ex. L).

Mr. Aumack sent another letter to the same address on January 12, 2016 because there was no reply to his first letter. To date, IRS Appeals has never responded to either letter. (*Id.*, Ex. M).

Further, White testified that he had a conversation with a person at the IRS about his concerns with the Plaintiff's estate litigation, and asked an IRS representative about the implication of waiting until after the litigation was concluded to file the federal estate tax return. The IRS representative with whom he spoke reaffirmed his understanding that because full payment had been made before the date prescribed for payment, there would be no implication for filing late. (*Id.*, Ex. N, at 29:6-30:19).

Upon receipt of the August 3rd letter White called the contact person on that letter at that point and was advised that there was an "error, and that the assessment was incorrect." (*Id.*, Ex. N, at 82:5-83:5).

At her deposition, Keenan stated that she had a conversation with a representative of the IRS similar to the one White had. She called the IRS at various times to discuss third party valuations and what happens if there is a late filing, and IRS representatives advised if "you're paid in, you're fine." (*Id.*, Ex. O at 19:3-13). Further, Keenan explained that she understood that as long as the estate tax was paid into the taxing authorities, a late penalty for failure to timely based on a reasonable cause would not be assessed. (*Id.*, Ex. O, at 21:6-9).

During discovery, the IRS developed some information about the seemingly lackadaisical approach taken by Plaintiff to file the return. Mr. Skeba, as executor, had little knowledge of

6

the extended deadline date (Def. Statement of Undisputed Facts, ECF No. 13-3, ¶ 14) and Mr. Skeba never questioned White as to when the estate tax return would be filed. (*Id.*, ¶ 15). Moreover, White had hired another accounting firm to prepare the estate tax, return but Mr. Skeba never communicated with that firm, and Mr. White failed to provide pertinent information requested by that firm which prevented the accounting firm from filing the return on a more timely basis. (*Id.*, ¶¶ 17-20).

II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912

7

F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor . . . that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

III.

The long-established principle in interpreting tax statutes is that they are narrowly construed. *Gould v. Gould*, 245 U.S. 151, 153 (1917). *Gould* reasons: "[I]t is the established rule not to extend their [tax] provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out." In the event of ambiguity, the Court's interpretation should be "construed most strongly against the government, and in favor of the citizen." *Id.* In addition, when interpreting tax statutes that impose penalties, precedence requires that "penal statutes are to be construed strictly' . . . and that [a taxpayer] 'is not to be subjected to a penalty unless the words of the statute plainly impose it." *Comm'r v. Acker*, 361 U.S. 87, 91(1959) (internal citations omitted). The *Gould* principle has been subject to some criticism. *See, Fedders Fin. Corp. v. Director, Division of Taxation*, 96 N.J. 376, 384-85 (1984). Due to same, the law has evolved in estate tax matters to acknowledge that the estate bears the burden to prove it has exercised ordinary business care and prudence in the event it filed a late return. *United States v. Boyle*, 469 U.S. 241, 246 (1985) (quoting 26 CFR § 301.6651(c)(1) (1984)).

In *Boyle*, Chief Justice Burger addressed "whether a taxpayer's reliance on an attorney to prepare and file a tax return constitutes 'reasonable cause' under § 6651(a)(1) of the Internal

8

Revenue Code, so as to defeat a statutory penalty incurred because of a late filing." *Id.* at 242. According to 26 CFR § 301.6651-1(c)(1), a taxpayer filing a late return must show that he or she exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. *Id.* at 243. Chief Justice Burger reasoned there was an administrative need for strict filing requirements. He wrote:

> The time has come for a rule with as 'bright' a line as can be drawn consistent with the statute and implementing regulations. Deadlines are inherently arbitrary; fixed dates, however, are often essential to accomplish necessary results. The Government has millions of taxpayers to monitor, and our system of self-assessment in the initial calculation of a tax simply cannot work on any basis other than one of strict filing standards. Any less rigid standard would risk encouraging a lax attitude toward filing dates. Prompt payment of taxes is imperative to the Government, which should not have to assume the burden of unnecessary *ad hoc* determinations.

(*Id.* at 248-49).

Accordingly, Chief Justice Burger differentiated between a taxpayer's reliance on advice from an attorney or accountant as reasonable care, but he found that "a taxpayer does not have to be a tax expert to know that tax returns having filing dates and taxes must be paid when due." *Id.* at 251. As such, simple reliance on one's attorney or accountant does not meet the reasonable care standard.

The resolution of this matter hinges on an interpretation of a section of the IRS Code (26 C.F.R.§ 6651) called "Failure to file tax return or to pay tax." This provision has several sections, and each shall be addressed.

Generally, § 6651 addresses the assessment of penalties for late filing of a return, and late payment of taxes due. More specifically, the penalty under § 6651(a)(1) addresses the failure to *file* a timely return. § 6651(a)(1) reads:

9

> In case of failure (1) to file any <u>return</u> on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate . . . .

26 U.S.C. § 6651(a)(1).

On the other hand, the penalty for failure to timely pay the tax is set forth in § 6651(a)(2). This section reads:

> In case of failure . . . (2) to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate . . .

§ 6651(a)(2).

The calculation of the penalty imposed for failure to timely file a return (subsection (a)(1)) and failure to timely pay the tax (subsection (a)(2)) is clarified in § 6651(b). It declares:

> (b) <u>Penalty imposed on net amount due</u>. For purposes of--
> (1) subsection (a)(1), the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed on the return,
> (2) subsection (a)(2), the amount of tax shown on the return shall, for purposes of computing the addition for any month, be reduced by the amount of any part of the tax which is paid on or before the beginning of such month and by the amount of any credit against the tax which may be claimed on the return[.]

§ 6651(b).

The parties disagree on how to construe these provisions. Plaintiff proffers two interpretations that support its position. First, Plaintiff argues that subsection (a)(1) should be read together (*in pari materia*) with § 6651(b)(1). In reading these subsections together, Plaintiff concludes that the late filing penalty is calculated by using the formula set forth in subsection (a)(1) incorporating the "net amount due" on the "the date prescribed for payment" as set forth in subsection (b)(1). Since the estate tax was overpaid on March 18, 2014 and the extension ran until September 10, 2014, there was no net amount due on the September deadline; and hence, no penalty may be imposed.

Secondly, the Plaintiff argues that the phrase "such failure is due to reasonable cause not due to willful neglect" in subsection (a)(1) protects the taxpayer from a penalty if the return was filed late due to a reasonable cause.

The government disagrees with the taxpayer's arguments. The government proffers that the requirements of § 6651(a)(1) and (b) must be construed with another statute (26 U.S.C. § 6151) entitled "Time and place for paying taxes shown on returns." § 6151 states: "[T]he date filed for payment of such tax shall be deemed a reference to the last day fixed for such payment (determined without regard to any extension of time for paying the tax)." More specifically, § 6151 reads in pertinent part:

> (a) General rule. Except as otherwise provided in this subchapter [26 USCS § 6151 et seq.] when a return of tax is required under this title or regulations, the person required to make such return shall, without assessment or notice and demand from the Secretary, pay such tax to the internal revenue officer with whom the return is filed, and shall pay such tax at the time and place fixed for filing the return (determined without regard to any extension of time for filing the return).

\*\*\*

11

> (c) Date fixed for payment of tax. In any case in which a tax is required to be paid on or before a certain date, or within a certain period, any reference in this title to the date fixed for payment of such tax shall be deemed a reference to the last day fixed for such payment (determined without regard to any extension of time for paying the tax).

Based on § 6151, the government cleverly reasons that the last day for payment was nine months after the death of Agnes Skeba -- March 10, 2014; because no return was filed by that date a penalty may be assessed. Applying the rationale to the facts, the government contends only $750,000 was paid on or before March 10, 2014 when $2,528,838 was due on that date. As such, referring back to § 6651(a)(1), a 25% penalty on the difference is assessed because it was not paid by March 10, 2014. As such, the full payment of the estate tax on March 18, 2014 is of no avail because the "last date fixed" was March 10, 2014. As such, the government argues that the imposition of a penalty in the amount of $450,959.00 is appropriate.

The IRS' arguments miss the mark. First, both §§ 6651(a)(1) and (a)(2) designate the specific day on which penalties will be assessed for both late filing and payment of the estate tax return. Both paragraphs specify that the "date prescribed" is to "be determined with regard to any extension of time for filing." As such, the language of the statute in dispute is the one which is given precedence over a more generic statute like § 6151. *See, La Vallee Northside Civic Asso. v. V.I. Coastal Zone Mgmt. Com.*, 866 F.2d 616, 621 (3d Cir. 1989); *see also, Meyers v. Heffernan*, No. 12-2434 (MLC), 2014 WL 3343803, at *8 (D.N.J. July 8, 2014).

The government has a valid point that there is an administrative need to complete and close tax matters. Here, the Estate had nine months to file the return, the extension added six months, and defendant unilaterally added another nine months to file the return. Although there was the timely payment of the estate taxes, the matter, in the government's view, lingered and the administrative objective to timely close the file was not met. *See generally, United States v.*

*Boyle*, 469 U.S. 251 (1985). There may be a need for some other penalty for failure to timely file a return, but Congress must enact same.

Finally, another issue in this case is whether Plaintiff had reasonable cause and not willful neglect to timely file a return. Both parties had reasonable arguments. In this case, White submitted his letter explaining the rationale for not filing (see above) and without a hearing or communication, the IRS reply was "pending litigation is not a reasonable cause." (ECF No. 13-14, p. 171). Based on the facts, this curt statement is insufficient. As such, the decision is arbitrary.

In White's letter, he refers to Judge Frank Cuiffani as presiding over the litigation in question. Judge Cuiffani was a terrific judge. There is little reason to believe that he let this case sit on the docket without cause. Additionally, Mr. White refers to the Hoagland law firm and one of the attorneys assigned to the case was diagnosed with cancer. The Hoagland firm is a very prestigious and professional firm. Hence, the IRS denial without any further investigation of the facts is arbitrary.

In addition, the IRS should have reviewed the entire file of the Estate, not just the last letter from White. For example, in White's letter of March 6, 2014 he notes that there was difficulty in "securing all of the necessary valuations and appraisals . . . caused by the contested litigation." New Jersey is not Iowa. In Monroe, New Jersey, a farm will often sit in residential, retail, and manufacturing zones. To appraise such a farm requires intensive knowledge of zoning considerations. The IRS should have conducted an evidentiary hearing or undertaken some investigation before deciding the issue. At the end of the day, the curt one-line denial of the IRS is arbitrary and capricious.

For all of the reasons set forth above, Plaintiff's motion is granted; and Defendant's motion is denied.

_____
PETER G. SHERIDAN, U.S.D.J.